MILLER & ENGLAND v. WALKER PATENT PIVOTED BIN CO.

(Circuit Court, E. D. Pennsylvania. June 20, 1905.)

No. 22.

1. PATENTS—ANTICIPATION—REJECTED APPLICATION FOR PATENT.

While a rejected application for a patent is not a bar to a subsequent patent to another for the same device, the fact of such rejection does not of itself characterize the invention as an abandoned experiment,

and if it, in fact, had passed beyond the experimental stage and was in practical and successful use, it cannot thereafter be appropriated and patented by another.

2. SAME—TILTING BINS.

The Bacon patent, No. 447,532, for a tilting bin, is void, the bin shown having been previously made and put into use by another.

In Equity. Suit for infringement of letters patent No. 447,532, for a tilting bin, granted to Byron R. Bacon March 3, 1891. On final hearing.

Henry E. Everding, for complainants.

Ernest Howard Hunter, for defendants.

ARCHBALD, District Judge.* The Walker Patent Pivoted Bin Company, defendants, are manufacturers of pivoted or tilting, counterbalanced, store bins, one style of which conforms to the Walker (1895) patent, and the other to the patent issued to the same inventor three years later.

In both, the axis of oscillation is at the front edge of the inclosing casing or bin chamber, those manufactured under the later patent being distinguished by a swell front, as a special feature, which adds materially to their efficiency. The general subject of tilting bins was discussed, and the state of the art reviewed, by this court in Walker Patent Pivoted Bin Co. v. Brown & Krause, 110 Fed. 649, where the Walker (1898) patent was considered and sustained; and it came up again in Walker Patented Pivoted Bin Co. v. Miller & England (C. C.) 132 Fed. 823, with a like result, infringement also being found. Since that suit was instituted, however, Miller & England, the present complainants, who were defendants there, have become the owners of the Bacon (1891) patent, and now charge that its essential features are appropriated by both the Walkers, under which the defendants operate, and—the tables being turned—that they infringe upon it.

The tilting or pivoted bin covered by the Bacon patent is one of a general class, of which there are many types, among which it is by no means the first. This is admitted by the inventor in the specifications, the particular points of improvement which he had in mind being thus expressed:

"Bins or holders for grain and other substances have been incased and pivoted, so as to be swung into or out of the case to give access to the open

* Specially assigned.

upper end of the bin, and the pivots have sometimes been at the sides, and nearly in line with the center of gravity, and sometimes near the middle or outer edge of the bottom. In these cases the weight may sometimes tend to close the bin back into its place when open, or to partially open the bin after being swung back to place. My improvements relate to the peculiarities of construction set forth hereinafter, whereby the bin will remain either open or shut, and, when closed, the weight of the bin and of its contents serves to keep the bin firmly closed against the case."

The form of bin adopted to accomplish this purpose by the inventor is made narrower at the bottom than the top, and is pivoted at the lower front edge of the casing, with regard to which it is further said:

"If the bin were rectangular, the weight of the material in the bottom of the bin might cause the bin to swing back automatically after having been opened. To prevent this, the bin is made sufficiently narrow at the bottom— by inclining the back, or using a curved back—for the center of gravity of the bin to come forward of the hinges when the bin is opened, * * * thereby causing the bin to remain open; but, when closed, the center of gravity is always to the rear of the hinges, and the weight keeps the bin tightly closed against the casing."

Upon this the following claim is formulated:

"(1) The combination, with an inclosing case, of a bin fitting within the case and narrower at the bottom than at the top, and pivots at the bottom edge of the front of the bin for connecting the same to the case, and a stop to limit the movement of the bin as it is swung open, substantially as set forth."

The essential and distinguishing characteristics of the invention as thus specified and claimed are: (1) That the bin shall be narrower at the bottom than the top; (2) that it shall be pivoted to the case at the front lower edge; and (3) that it shall be provided with a stop to limit its forward swing. The only possible novelty in this combination is the form of the bin, by which it is made tapering from the bottom upwards, whereby the center of gravity is thrown forward or back of the axis of oscillation, securing stability of position when the bin is open or closed. The idea of tilting was not new (Schultz, 1861); nor of pivoting at the front edge of the casing, which is shown in the Potter cabinet (1879) and the Hunter bin (1888), to say nothing of the Hessler music stand (1879) or the Tyler office desk (1882); nor of tapering or flaring the sides of the bin, which appears in the Bloomer flour box (1886); nor yet of having a stop to prevent the bin from swinging out of the casing,

an obvious expedient, which it involved no invention to supply; but which is also found in the Hunter (1888).

Conceding, however, that the exact combination described in the patent is not anticipated in any of the references so given, and assuming that it would be valid if original with the patentee, it is clearly shown that he was not the real inventor. The fact is that early in 1878 Mr. Walker, the president of the defendant company, who was then in the grocery business at Pottsville, Pa., devised and installed in his store a tilting bin, of which the Bacon is an exact duplicate and reproduction. It was narrower at the bottom than the top, was pivoted at the front lower edge of the casing, and had a cleat or stop to engage the back and limit the forward swing. In March, 1878, Mr. Walker made application for a patent, and

the character of his device is not only established by the description there given, but by the drawings which accompanied it. The model which was required, by the rules of the Patent Office which then prevailed, is also produced, and shows the same construction. This is evidence over which there can be no controversy, and the only question is as to its effect. A distinction is sought to be made with regard to this bin, because it was pivoted on a rounded edge of the casing, which fitted into a groove on the bottom, on which the bin rocked. But this is not material. That was the construction of the defendants' bin in the Brown and Krauss Case, 110 Fed. 649, and yet it was not regarded as sufficient to distinguish it from the patent there in suit, which called for a pivoting at the front edge of the casing. It is also said that there was no stop or cleat to prevent the bin from falling forward. But, however true this may have been of those which were actually installed in Mr. Walker's store, it cannot be said of the invention as applied for, where this feature is clearly shown.

It appears, however, that the Walker application was unsuccessful, a patent being refused by the examiner, and the attempt is thereupon made to have it discarded as an unsuccessful and abandoned experiment. Undoubtedly a rejected application is no bar to a subsequent patent to another for the same device. Corn Planter Patent, 23 Wall. 181, 211, 23 L. Ed. 161. But it does have a bearing on the question of prior invention or discovery, where that is raised. Westinghouse v. Chartiers Valley Gas Co. (C. C.) 43 Fed. 582. It is true that, as stated by Mr. Justice Bradley in the Corn Planter Patent:

"If, upon the whole of the evidence, it appears that the alleged prior invention or discovery was only an experiment and was never perfected or brought into actual use, but was abandoned and never revived by the alleged inventor, the mere fact of having unsuccessfully applied for a patent therefor cannot take the case out of the category of unsuccessful experiments."

But this is not to be misunderstood. It does not follow, because an application has been rejected, that the invention stands as an abandoned experiment. The application may not suffice to rescue it, if that is its real condition, but its rejection does not necessarily

give it that character. If the invention has advanced beyond the experimental stage, having been completed and put into operative shape, and particularly if it has gone into practical and successful use, the mere fact that an application for a patent has not met with favor at the hands of the Patent Office does not condemn or dispose of it as an invention; and that is the situation here. As already stated, Mr. Walker, prior to his application, had several of these bins constructed and installed in his store at Pottsville, where they were in actual and successful use for upwards of a year, until he gave up his business and removed to Philadelphia. While so in use, moreover, they were seen by one W. H. Douty, who was so pleased with them that, with the permission of Mr. Walker, and upon the understanding that a royalty should be paid if the patent which had been applied for was granted, he had similar bins constructed and set up in the store of Douty & Purcell at Shamokin. When the present controversy arose, these bins were looked up, and one of them was found in its original position on the premises, which had meanwhile been turned into a saloon, still in use, under the bar or counter, as a receptacle for crackers. This bin was produced and exhibited in court at the argument, and bears out all that is claimed for it, except, possibly, in the matter of a stop or cleat, which is not material. It thus appears that the ideas embodied by Walker in his application were not experimental, but represented a complete, practical, and useful device, fully as much so as that of Bacon which duplicates it, and equally worthy, it may be added, of a patent. It was not so considered, it is true, by the patent examiner, the principle involved being held to have been already appropriated. But that does not affect the completeness or the character of the device, whereby, whether patented or not, Walker, and not Bacon, is shown to have been the real inventor. No doubt, after the rejection of his application, he relinquished his proprietary rights by not only himself making use of this style of bin in his business, but by permitting it to be adopted and used by others for a long term of years. But that did not leave it open to be appropriated and patented by a third party, however independently he may have conceived and worked out the same idea. It was thenceforth public property, which any one could make use of without question. Bacon invented nothing new, therefore, and his patent is worthless. Whatever merit there is in the bin which is there shown, so far as this record goes, it was the conception of Walker, against whom it is now set up, who reduced it to practice, but abandoned it as a patentable invention upon the adverse action of the Patent Office.

Complainants' patent being invalid, the question of infringement is not important. It will not be out of course, however, to observe that, to say the least, it is doubtful. On the strength of the defendants' catalogue, I have assumed above that they are making a bin which is modeled on the lines of the earlier (1895) Walker patent. A bin of that character is there shown, which, if the Bacon patent were valid, would undoubtedly infringe it. But there is no proof of manufacture outside of the catalogue, and that hardly comes up to what is called for. With respect to the other style of

bin, manufactured under the Walker (1898), it may be that, disregarding the swell front, and measuring strictly at top and bottom, it is wider at the one than the other, thus apparently fulfilling the terms of the patent in controversy. But the outward bulging of the front is an essential feature which enters into the efficiency of the device, bearing directly on the counterbalancing of the bin and its stability when in open or closed position, and cannot be disregarded. Being cast advisedly in that shape for a purpose, it must be taken according to its general effect, by which it clearly broadens downwards and not up, the opposite of the Bacon, on which it does not therefore infringe. As already stated, however, the question of infringement is not material. Contenting myself with these observations until it becomes so, I will therefore make no definite decision with regard to it. It is enough to know that the patent cannot be sustained.

Let a decree be drawn dismissing the bill because of the invalidity of the patent, with costs.